UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| ALEXANDER RAYMOND GONZALEZ<br>HELENA BONNER GONZALEZ | 05-05993-5-ATS |
| DEBTORS | |

## ORDER ALLOWING OBJECTION TO CLAIM

The matter before the court is the debtors' objection to the claim filed by Four Oaks Bank.  A hearing took place in Raleigh, North Carolina on February 7, 2006.

Alexander Raymond Gonzalez and Helena Bonner Gonzalez filed a petition for relief under chapter 13 of the Bankruptcy Code on October 16, 2005.  On November 22, 2005, Four Oaks Bank & Trust Company filed a claim in the debtors' case in the amount of $29,059.63. Four Oaks held a security interest in equipment and assets of a corporation owned by the Gonzalezes, Rudders, Inc., and also holds a deed of trust on the Gonzalezes' home to secure its debt.  Four Oaks' claim arises from the deficiency owed after it sold the equipment at Rudders, Inc.  The debtors objected to the claim, contending that the sale of the assets was not commercially reasonable, and that Four Oaks is not entitled to any deficiency claim.

Mr. and Mrs. Gonzalez, through Rudders, Inc., operated a seafood restaurant in Fuquay-Varina, North Carolina.   On Wednesday,

September 21, 2005, Mr. Gonzalez went to the restaurant to check on operations and was met at the door by "Raven," a representative of the landlord, who presented a notice of eviction to Mr. Gonzalez. Raven allowed Mr. Gonzalez to retrieve his checkbook from the building, but advised Mr. Gonzalez that the bank had instructed him not to allow the Gonzalezes to remove any other items from the premises. The next day, the Gonzalezes received a notice of default and demand for $48,250.99 from Four Oaks.

Hubert Worthington, the collection recovery manager for Four Oaks, testified that he received a phone call from Rudders' landlord notifying him that Rudders was being evicted and that the landlord would change the locks. Upon receipt of that information, Mr. Worthington decided to declare the Four Oaks obligation in default, due to a six-month arrearage and the cessation of operations that would result from the eviction. Mr. Worthington trusted the landlord to secure the premises and the bank's collateral, and he had no further contact with either the landlord or the debtors for several days.

Meanwhile, the Gonzalezes drove by the restaurant and observed items being removed from the building and either being thrown away or loaded into vehicles. It appeared to the debtors that the landlord was removing food and dry goods from the restaurant, and when they looked into the dumpsters, they discovered some food storage containers and dishes that had been discarded. The Gonzalezes testified that there

2

was substantial food inventory present in the restaurant on the day of the eviction in anticipation of the weekend business rush, though they admitted that the value of the containers they observed in the dumpsters was probably only worth about $100.

A few business days after the eviction, Mr. Worthington was contacted by the landlord about a foul odor coming from the restaurant premises and requested that bank representatives take measures to remove spoiling food. Mr. Worthington met the landlord, Mr. Parker, and the local Four Oaks representative, Mr. Riley, at the restaurant and agreed that the landlord should remove the perishable items. Mr. Worthington testified that there was very little food in the premises at that time (suggesting that most of the food inventory had already been removed), and that what remained was not salvageable.

A few days later, Mr. Worthington returned to the premises to conduct an inventory of the bank's collateral. Ms. Gonzalez met with Mr. Worthington at that time and inquired about how the items would be sold. Mr. Worthington advised Ms. Gonzalez that he would conduct the sale and that he intended to sell the equipment to the highest bidder. Ms. Gonzalez inquired about the disposal of the food inventory, and Mr. Worthington told Ms. Gonzalez that the bank was not interested in the perishable items. Similarly, Mr. Worthington advised Ms. Gonzalez that the bank was not interested in the alcoholic beverages, and indicated

that the debtors could have the alcohol. When Ms. Gonzalez attempted to recover the alcohol, however, the landlord refused.

Four Oaks scheduled a sale of the restaurant equipment for October 31, 2005. The bank sent a notice of the sale to the debtors, and Ms. Gonzalez contends that the notice contained an incomplete listing of the bank's collateral. Ms. Gonzalez failed to notify Mr. Worthington of the discrepancy until the day of the sale, however, and the list was never amended.

Mr. Worthington conducted the sale on October 31. He opened the bidding with the bank's own bid of $19,900. The landlord agreed to match the bank's bid, and there were no higher bidders. The equipment was sold in a lump sum, and no effort was made to determine whether other buyers would purchase single items for a greater return. Mr. Worthington testified that many items were installed in the building and damage would occur to the premises if they were removed, so the bank determined that the equipment should be sold as it was. The debtors testified that all of the equipment could have been removed from the building, and they contend that certain items were sold that were not listed on the notice of sale.

The debtors contend that the sale of the Rudders collateral was not "commercially reasonable" and otherwise did not meet the requirements established in Article 9 of the Uniform Commercial Code. They contend the notice was insufficient, there was no effort to

4

attract buyers who might have paid more for the equipment, there should have been an attempt to sell the items individually to determine whether a greater return could be had, and there was no reasonable attempt to value the items. The debtors also maintain that the bank had an obligation to preserve the perishable collateral and that the bank essentially gave the food to the landlord in violation of the debtors' rights.

The court is not persuaded that the bank had an obligation to preserve and dispose of the perishable collateral. When Rudders was evicted by the landlord, Four Oaks was not required to take possession of the perishable food, in fact, it told the debtors that they could have the food inventory. The court expresses no opinion as to whether the landlord might have liability for any conversion of the perishable inventory.

With respect to the equipment inventory, North Carolina General Statute § 25-9-610(a) provides that "[a]fter default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing." Subsection (b) provides that

> [e]very aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable. If commercially reasonable, a secured party may dispose of collateral by public or private proceedings, by one or more contracts, as a unit or in parcels, and at any time and place and on any terms.

N.C. Gen. Stat. § 25-9-610(b). Section 25-9-611 governs notification, and provides in relevant part that the secured parties must send an authenticated notice of disposition to the debtor and to

> [a]ny other secured party or lienholder that, 10 days before the notification date, held a security interest in or other lien on the collateral perfected by the filing of a financing statement that:
> 1. Identified the collateral;
> 2. Was indexed under the debtor's name as of that date; and
> 3. Was filed in the office in which to file a financing statement against the debtor covering the collateral as of that date[.]

N.C. Gen. Stat. § 25-9-611(b). Section 25-9-613 sets forth the contents of the notification that are deemed sufficient, and establishes that a notice may still be satisfactory if it does not contain the information specified. N.C. Gen. Stat. §§ 25-9-613 (1) and (2).

Four Oaks issued a notice on October 12, 2005, as follows:

Four Oaks Bank & Trust Company

Notice of Sale

> Pursuant to and by virtue of the power of sale contained in a Security Agreement(s) executed by RUDDERS, INC. - (ALEXANDER GONZALEZ, PRESIDENT), on March 31, 2001. Default having been made in payment of the obligation secured by the above-referenced Security Agreement(s), the undersigned Secured Party will sell for cash at the former site of Rudders Restaurant, which is located at 525 Broad Street, Fuquay Varina, NC on October 31, 2005 at 1 p.m., or as soon thereafter as possible in case of multiple sales scheduled at the same time, the following described property (as described in the Security Agreement(s):

6

```
     See Attachment - All equipment, furniture and inventory are
     being sold "As Is-Where Is"

     Mileage: N/A
```

```
I hereby certify that I personally posted notices, an exact
copy of which appears above, in the manner and as provided
by the laws of the General Statutes of North Carolina, and
I further certify that I personally mailed an exact copy of
said notice to each debtor entitled to such notice under the
Security Agreement referred to in said notice, the 12th day
of OCTOBER, 2005.
        Locations: FOUR OAKS BANK & TRUST CO. --
                   FUQUAY VARINA, N.C.
                   WAKE CO. COURT HOUSE -- RALEIGH, N.C.PARKER
                   RENTAL PROPERTIES -- FUQUAY VARINA, N.C.
                   HELENA GONZALEZ -- FUQUAY VARINA, N.C.
                   ALEXANDER GONZALEZ -- FUQUAY VARINA, N.C.
                   RUDDERS RESTAURANT -- (PRIOR) -- FUQUAY
                   VARINA, N.C.

     (X) If checked, collateral will be sold subject to taxes and
     special assessments.

     Four Oaks Bank & Trust Company
     Secured Party

     By: /s/ HT Worthington
```

Exhibit "4" (collateral list omitted).

Mr. Worthington testified that the notice was posted at the local bank branch, at the restaurant, and at the landlord's office. He also mailed the notice to the Wake County courthouse, but he did not send it with a cover letter asking that the notice be posted, nor did he present any evidence that the notice actually was posted at the courthouse. Mr. Worthington also testified that he failed to conduct a UCC search, and he thus did not discover that another party, Supply

Services, Inc., also asserted a security interest on some of the same equipment. Accordingly, Supply Services did not receive a copy of the notice of sale.

The Four Oaks notice did not include all of the information set forth in § 25-9-613(1), and it was not provided to all the parties set forth in § 25-9-611. The notice, therefore, does not fall into the "safe harbor" provisions set forth in the statutes, and it is for the court to determine whether the notice and sale were otherwise "commercially reasonable." Though North Carolina's Article 9 was amended in 2001, the court considers the prior version of Article 9 instructive in determining what makes a sale "commercially reasonable." Like the current statute, former Article 9 provided for procedures that would conclusively be deemed commercially reasonable, see former North Carolina General Statute § 25-9-601, and it further mandated that the notice of sale must be posted on a bulletin board at the courthouse in the county in which the sale is to be held. See former N.C. Gen. Stat. § 25-9-603.

Though the posting requirement has since been removed from the statute, in the absence of other efforts to advertise the sale or otherwise inform potential buyers of the sale, the court considers such posting to have been necessary in this case for the sale to be commercially reasonable. While Four Oaks has the burden of proving its sale was commercially reasonable, Four Oaks did not present any

evidence that the notice was actually posted at the courthouse.  And though the notice of sale states that Mr. Worthington personally posted the notice, he testified that he merely mailed the notice to the clerk of court, without any cover letter or other instruction to the clerk. The failure of the bank to post the notice, in conjunction with its failure to notify the junior lienholder of the sale, renders this sale not commercially reasonable.

Once the court determines that the sale was not in compliance with the commercially reasonable standard, there is a presumption that the collateral is worth at least the value of the debt.  N.C. Gen. Stat. § 25-9-626(a)(4); NationsBank of N.C., N.A. v. American Doubloon Corp., 125 N.C. App. 494, 501, 481 S.E. 2d 387, 391 (1997).  The presumption may be rebutted by the creditor, but Four Oaks did not present credible evidence regarding the value of the collateral or what it would have sold for at a commercially reasonable sale.  As a result, the court is compelled to find that "the amount of proceeds that would have been realized is equal to the sum of the secured obligation, expenses, and attorney's fees[,]" North Carolina General Statute § 25-9-626(a)(4), and Four Oaks is not entitled to recover any deficiency from the debtors.

In summary, the court concludes that the sale of the Rudders, Inc. collateral was not commercially reasonable, that the value of the

9

collateral was equal to the amount of the debt, and that the bank is not entitled to a deficiency claim.

Based on the foregoing, the debtors' objection to the claim filed by Four Oaks Bank is **ALLOWED**.

**SO ORDERED.**

**DATED:   February 21, 2006**

A. Thomas Small
United States Bankruptcy Judge